844 So.2d 316 (2003)
Pat Shelby TODD, Jr.
v.
Christine E. ANGELLOZ and Family Psychology Center, Inc.
No. 2002 CA 1400.
Court of Appeal of Louisiana, First Circuit.
March 28, 2003.
Writ Denied June 27, 2003.
*317 H. Clay Walker, Shreveport, for Plaintiff/Appellant Pat Shelby Todd, Jr.
Keith B. Nordyke, Baton Rouge, for Defendants/Appellees Christine E. Angelloz and Family Psychology Center, Inc.
Before: CARTER, C.J., WHIPPLE and CIACCIO, JJ.[1]
WHIPPLE, J.
Plaintiff appeals a judgment dismissing his lawsuit, pursuant to an exception of prematurity, and dismissing a medical review panel, on the basis of defendant's judicial immunity. We affirm.

FACTS
On June 1, 2000, Alicia Brown Todd filed for divorce from Pat Shelby Todd, Jr. On July 18, 2000, a judge of the Eighteenth Judicial District appointed and ordered Dr. Christine Angelloz to perform a mental health evaluation of Mr. and Mrs. Todd and their three minor children in order to develop a custody plan. On August 28, 2000, the Todds stipulated to amend the prior judgment by canceling the previous judgment ordering an evaluation of the entire family and agreeing to have Dr. Angelloz perform a psychological evaluation of Mr. Todd. The amended judgment also provided that if deemed necessary by Dr. Angelloz, the minor children would be made available for behavioral observations and Mrs. Todd also was required to present herself for one or more interviews with Dr. Angelloz. Following the evaluation, Mr. Todd was allowed only supervised visitation with his children for the period of December 2000 until October 2001.[2]
On December 12, 2001, Mr. Todd filed the instant suit in the Nineteenth Judicial District seeking damages against Dr. Angelloz and the Family Psychology Center, Inc. The petition alleges that Dr. Angelloz: (1) failed to provide the trial court and the parties with a written report of her findings, a violation of LSA-R.S. 9:331 B; (2) negligently misinterpreted and misrepresented the results of Mr. Todd's psychological evaluation; and (3) exceeded the scope of the order appointing her in this case by making an actual custody recommendation.
According to Mr. Todd's lawsuit, he was unable to see his children free of restrictions from December 2000 until October 2001. Mr. Todd asserts that this custody *318 arrangement was the result of Dr. Angelloz's deliberate indifference, gross negligence, personal malice, de facto custody determination of December 2000, and failure to comply with the guidelines of the American Psychological Association and LSA-R.S. 9:331 B. Further, Mr. Todd alleges Dr. Angelloz's acts were violations of his constitutional rights, actionable torts under LSA-C.C. art. 2315, and actionable medical malpractice.
On December 14, 2001, Mr. Todd filed a petition with the Louisiana Patient's Compensation Fund requesting formation of a medical review panel. In this petition, Mr. Todd made the same allegations regarding the actions of Dr. Angelloz and the resulting impact of these alleged actions on his visitation rights with his children.
In response, Dr. Angelloz and the Family Psychology Center Inc. filed a dilatory exception raising the objection of prematurity and a peremptory exception raising the objections of immunity and no cause of action. Following a hearing on the matter, the trial court granted defendants' exception of prematurity and dismissed Mr. Todd's district court lawsuit. The trial court also sustained the exception raising the issue of immunity, finding Dr. Angelloz had judicial immunity in this matter; thus, the court dismissed the medical review panel. Mr. Todd appeals. We affirm.

DISCUSSION
Prematurity
Louisiana Code of Civil Procedure article 926 A(1) provides for the dilatory exception of prematurity. A suit is premature if it is brought before the right to enforce the claim sued on has accrued. LSA-C.C.P. art. 423. Prematurity is determined by the facts existing at the time suit is filed. Hildago v. Wilson Certified Express, Inc., 94-1322, p. 3 (La.App. 1st Cir.5/14/96), 676 So.2d 114, 116. The exception raising the objection of prematurity may be utilized in cases where the applicable law or contract has provided a procedure for a claimant to seek administrative relief before resorting to judicial action. Hidalgo, 94-1322 at p. 4, 676 So.2d at 116.
The Medical Malpractice Act requires that all medical malpractice claims against covered health care providers be submitted to a medical review panel prior to filing suit in district court. LSA-R.S. 40:1299.41(E); LSA-R.S. 40:1299.47(A) & (B). This administrative procedure affords the medical review panel an opportunity to render its expert opinion on the merits of a complaint. If an action against a health care provider covered by the Act has been commenced in district court and the claimant's proposed complaint has not been first presented to a medical review panel, an exception of prematurity must be sustained, and claimant's district court claim must be dismissed. See LSA-C.C.P. art. 933; LSA-R.S. 40:1299.47(B)(1)(a)(i); Hildago, 94-1322 at p. 4, 676 So.2d at 117.
Mr. Todd argues there are significant claims within his petition that are not covered by the Medical Malpractice Act because they assert intentional torts. He argues that Dr. Angelloz acted intentionally by exceeding the scope of the judge's order (by making a custody recommendation), and by withholding her report for nine months. In addition to his malpractice claim, Mr. Todd asserts intentional constitutional due process and equal protection violations occurred herein.
In general, any conduct by a health care provider complained of by a patient is properly within the scope of the Medical Malpractice Act if it can reasonably be said that it comes within the definitions of the Act, even though there are alternative theories of liability. Hildago, 94-1322 at *319 p. 5, 676 So.2d at 117. Malpractice is defined in the Medical Malpractice Act as "any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely[.]" LSA-R.S. 40:1299.41(A)(8).
The Louisiana Supreme Court has recently set forth a six-factor test for determining whether particular conduct by a health care provider constitutes malpractice under the Medical Malpractice Act. In Coleman v. Deno, XXXX-XXXX, pp. 17-18 (La.1/25/02), 813 So.2d 303, 315-16, the court used the following factors in making its determination:
(1) whether the particular wrong is `treatment related' or caused by a dereliction of professional skill,
(2) whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached, and
(3) whether the pertinent act or omission involved assessment of the patient's condition[,].
* * *
(4) whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform,
(5) whether the injury would have occurred if the patient had not sought treatment, and
(6) whether the tort alleged was intentional.
Coleman, XXXX-XXXX at pp. 17-18, 813 So.2d at 315-16.
Applying the Coleman factors to the allegations in this case, we first note that the allegations made against Dr. Angelloz arise from a judicial appointment in which she was ordered to perform a psychological evaluation of Mr. Todd. Clearly, allegations that Dr. Angelloz exceeded the scope of her appointment or did not properly present the results of her evaluation are allegations of a dereliction of her professional skill.
Regarding the second factor, although we only have the allegations that Dr. Angelloz violated the American Psychological Association guidelines and misrepresented the results of the test she performed, we concede that expert testimony may not be necessary to evaluate whether Dr. Angelloz failed to conform to established guidelines or misrepresented test results. In order to prevail, Mr. Todd must demonstrate by a preponderance of the evidence a causal nexus between Dr. Angelloz's breach and Mr. Todd's deprivation of custody. See Pfiffner v. Correa, 94-0924, 94-0963, 94-0992, pp. 9-10 (La.10/17/94), 643 So.2d 1228, 1234. However, in order to establish a breach of the standard of care, Mr. Todd seemingly would be required to present expert testimony to establish what is the standard of care for a psychologist in performing a psychological evaluation as well as the role of a psychologist in a custody determination.
As to the third factor, Dr. Angelloz's act of evaluating Mr. Todd's psychological condition pursuant to the court's order clearly involved a professional assessment of Mr. Todd's condition. As to the fourth factor, it is undisputed that the alleged misconduct occurred within the context of a psychologist-patient relationship. Although no treatment was rendered, Dr. Angelloz was administering tests used by her profession to evaluate patients. Although Dr. Angelloz was not recommending treatment but reporting her findings to a court for the court's purposes, Dr. Angelloz's involvement was on the basis of rendering professional services involving Mr. Todd.
*320 With regard to the fifth factor, i.e., whether the injury would have occurred had the evaluation not taken place, there is no evidence in the record to support or controvert the propriety of the custody order made by the court. We note that the actual custody order in place covering the period of Mr. Todd's alleged wrongful deprivation of custody and reasons in support thereof are not in the record. Also, given this stage of the proceedings, there is nothing to support or controvert the propriety of the custody order.
Finally, although Mr. Todd alleges Dr. Angelloz's behavior was intentional, he also alleges the same actions were negligent. Considering these dual characterizations of the acts of Dr. Angelloz in conducting and reporting the results of her evaluation, we deem Mr. Todd's attempt to classify her actions as insufficient to remove the claim from the provisions of the Medical Malpractice Act.
Applying the Coleman factors to the allegations presented in this case, we find that Mr. Todd's claim raises issues of "malpractice" clearly subject to the requirements of the Medical Malpractice Act. Accordingly, the trial court properly granted the dilatory exception raising the objection of prematurity.
Immunity
The trial court also dismissed the medical review panel based on its determination that Dr. Angelloz was entitled to judicial immunity under LSA-C.C.P. art. 373. As set forth in art. 373:
An expert appointed by a trial court to assist it in the adjudication of a case in which his special skill and knowledge may aid the court is an officer of the court from the time of his qualification until the rendition of final judgment in the case.
The immunity of court-appointed psychiatrists under LSA-C.C.P. art. 373 was addressed by the Second Circuit in S.T.J. v. P.M., 556 So.2d 244 (La.App. 2nd Cir. 1990). In affirming the dismissal of a suit against a court-appointed psychiatrist, S.T.J. relied on article 373 and adopted the reasoning of Myers v. Morris, 810 F.2d 1437 (8th Cir.), cert. denied, 484 U.S. 828, 108 S.Ct. 97, 98 L.Ed.2d 58 (1987), to find appointed psychologists are entitled to absolute immunity, protecting them from having to litigate the manner in which they perform these functions. S.T.J., 556 So.2d at 247. As the court noted in S.T.J., the danger presented in not extending immunity to these court-appointed experts would result in psychologists avoiding future court appointments, and the fear of civil liability would mar opinions and recommendations provided to the courts. S.T.J., 556 So.2d at 247.
Mr. Todd argues that Dr. Angelloz should not be granted judicial immunity and cites Marrogi v. Howard, XXXX-XXXX (La.1/15/02), 805 So.2d 1118 for the proposition that an expert witness is not entitled to immunity. In Marrogi, the Louisiana Supreme Court held that witness immunity did not bar a claim against a retained expert witness when the claim arises from the expert's allegedly deficient performance of his duties to provide litigation services, such as formulating opinions and recommendations, and providing opinion testimony before or during trial. Marrogi, XXXX-XXXX at p. 1, 805 So.2d at 1120. The supreme court noted that the underlying rule permitting a witness to speak freely and without fear of exposure to vexatious litigation where a search for the truth is before the fact-finder is not advanced by immunizing the incompetence of a party's retained expert witness simply because the expert witness provides professional services, including testimony, in relation to a *321 judicial proceeding. Marrogi, XXXX-XXXX at p. 20, 805 So.2d at 1131.
In the present case, Dr. Angelloz was appointed to render professional services in the context of the Todds' custody proceedings. There is no allegation made by Mr. Todd that he retained Dr. Angelloz as an expert witness on his own behalf. Rather, Dr. Angelloz was appointed to assist the trial court in making a custody determination by providing a psychological evaluation of Mr. Todd. Because Dr. Angelloz was a court-appointed expert, we find the policies and reasoning enunciated in S.T.J. warrant extending judicial immunity to Dr. Angelloz in these proceedings. Accordingly, the trial court properly dismissed the medical review panel against Dr. Angelloz.

CONCLUSION
Considering the record and applicable law herein, we find no error in the trial court's judgment sustaining the defendants' dilatory exception raising the objection of prematurity as to the lawsuit filed in district court. Moreover, we find no error in the trial court's determination that Dr. Angelloz is immune from suit as a court-retained expert. Accordingly, we affirm the dismissal of the lawsuit filed against Dr. Christine Angelloz and the Family Psychology Center, Inc., and the proceedings before the medical review panel, alleging negligence on the part of these defendants. All costs of these proceedings are assessed against appellant, Pat Shelby Todd, Jr.
AFFIRMED.
NOTES
[1] Judge Philip C. Ciaccio (retired), Fourth Circuit Court of Appeal, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] The record does not contain the custody order providing for supervised visitation nor does it contain any subsequent modifications to the custody order.